# In the United States Court of Federal Claims

No. 10-583C
(Filed: April 27, 2012)
**\*OPINION ORIGINALLY FILED UNDER SEAL ON APRIL 24, 2012\***

| | | |
|---|---|---|
| THREE S CONSULTING, | ) | Post-Award Bid Protest; Standing to |
| | ) | Challenge Award; Interested Party; |
| Plaintiff, | ) | Definition of Federal Procurement; |
| | ) | Government Official's Authority to |
| v. | ) | Bind the Government |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Daniel A. Bellman*, Granville, OH, for plaintiff. *William R. Wernet*, Granville, OH, of counsel.

*Christopher Lonnie Krafchek*, United States Department of Justice, Washington, D.C., with whom was *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Kirk T. Manhardt*, Assistant Director, and *J. Mackey Ives*, United States Army, for defendant.

## OPINION

**FIRESTONE**, *Judge*.

Plaintiff Three S Consulting, Inc. ("plaintiff") initially filed this post-award bid protest under the Tucker Act, 28 U.S.C. § 1491(b) (2006), on August 27, 2010.  Plaintiff filed its Second Amended Complaint on September 19, 2011.  Second Amended Compl. ("Compl."), ECF No. 155.  In its initial complaint, plaintiff alleged that defendant the United States ("the government") violated the Competition in Contracting Act ("CICA"),

10 U.S.C. § 2304, in connection with its procurement of survey services for the Army's

Residential Communities Initiative ("RCI"), a military housing privatization program.

Specifically, plaintiff alleged that the government improperly awarded the survey

services contract to the Military Housing and Lodging Institute ("MHLI") under a

Federal Supply Schedule ("FSS"), Mission Oriented Business Integrated Services

("MOBIS") survey services contract.  Plaintiff charged that MHLI did not have all of the

necessary services within its MOBIS contract and that the contract should have therefore

been competitively bid.

      After this lawsuit was filed, the contract with MHLI was terminated.  Plaintiff

filed its first and second amended complaints to challenge the actions taken by the Army

program office after the termination of MHLI's contract, and in particular, the actions of

Mr. Ian Clark, the RCI liaison.  Mr. Clark, plaintiff alleges, coordinated private

agreements for the completion of the surveys between MHLI and the private-sector

developers involved in the RCI program.  Plaintiff argues that the actions of Mr. Clark

were tantamount to the government acquiring survey services through an illegal sole

source procurement in violation of CICA.  Plaintiff's second amended complaint seeks a

judgment finding that the government acted arbitrarily, capriciously, and not in

accordance with law in awarding the survey services contract to MHLI in the first

instance and in then conducting an illegal sole source procurement by facilitating

agreements between MHLI and the private developers after MHLI's contract with the

Army was terminated.  Plaintiff further seeks a permanent injunction prohibiting the

government from procuring future survey services without first providing notice to plaintiff. Finally, plaintiff seeks bid preparation costs and attorneys' fees.[1]

Now before the court are the parties' motions for judgment on the administrative record.[2]  The government has also moved to dismiss plaintiff's case for lack of subject matter jurisdiction and for failure to state a claim under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").  In its motion, the

---

[1] This case was transferred to this judge on August 2, 2011.  Transfer Order, ECF No. 132. Following a status conference the court ordered the parties to finalize briefing on the government's motion to dismiss and for judgment on the administrative record.  See Scheduling Order, Aug. 19, 2011, ECF No. 140.

[2] Plaintiff has also moved to supplement the administrative record with (1) several documents received from the government during the litigation, (2) documents which were filed as attachments to its amended complaints, and (3) an affidavit from Ms. Suman Sarkar, the CEO of Three S Consulting.  Under the Federal Circuit's recent decision in Axiom Resource Management, Inc. v. United States, 564 F.3d 1374, 1379-80 (2009), "the parties' ability to supplement the administrative record is limited," and judicial review should be limited to the record actually before the agency unless "the omission of extra-record evidence precludes effective judicial review."  First, plaintiff seeks to bring before the court documents which it argues demonstrate that the Army conducted an illegal sole source procurement when Mr. Clark took steps to facilitate agreements between MHLI and the RCI program private developers.  The government has not objected to the court's consideration of these documents in connection with plaintiff's claim.  Although the government disputes that there was a sole source procurement, these documents were before the agency and are part of the record in this case.  As such, the motion is **GRANTED** as to these documents.

In addition, plaintiff seeks to add to the record the calculations used in the termination for convenience settlement between MHLI and the Army, which were provided by MHLI to counsel for the government on September 13, 2011.  Plaintiff also seeks to add two copies of a page on the MHLI website, viewed December 3, 2010 and September 18, 2011, which state that "MHLI is currently performing all phases of [the RCI] survey," and which were attached to plaintiff's first and second amended complaints.  ECF Nos. 159-5, 159-6.  The court finds that these documents were not part of the agency procurement decision record.  Nonetheless, the court has reviewed these documents in considering the government's motion to dismiss plaintiff's claim regarding the alleged sole source procurement for lack of jurisdiction.

Finally, although the affidavit of Ms. Suman Sarkar is not part of the administrative record it has been considered by the court in connection with plaintiff's claim for injunctive relief.  See, e.g., AshBritt, Inc. v. United States, 87 Fed. Cl. 344, 366-67 (2009).

government argues that plaintiff lacks standing as an interested party to challenge the award to MHLI because plaintiff did not have a MOBIS contact at the close of bidding and therefore plaintiff was not eligible for the award.  The government further argues that plaintiff does not have standing to challenge or alternatively has not stated a claim for relief in connection with the alleged illegal sole source procurement that followed the Army's termination of MHLI's contract.  The government argues, <u>inter alia</u>, that the alleged actions of an individual RCI program liaison were not "procurement-related" activities and thus cannot serve as the basis for jurisdiction, or for stating a claim under 28 U.S.C. § 1491(b).  The government also contends that plaintiff's claims are moot because both the MHLI contract and the agreements between MHLI and the private developers have been terminated, and the government does not have any present plans to re-procure the survey services.

Plaintiff contends in response that it possesses standing, that its complaint states a claim upon which relief can be granted, and that it is entitled to judgment on the administrative record.  Plaintiff also argues that its case is not moot because the government's actions demonstrate that plaintiff's alleged violations of CICA can reasonably be expected to recur, and that, because of the nature of the relief claimed, the court can still fashion a useful remedy in this case.

After careful review of the motions and responses, for the reasons discussed below, the court **GRANTS** the government's motion to dismiss.

## I.   BACKGROUND

### A.   RCI Program

The following facts taken from the pleadings and administrative record are not
contested unless expressly noted.  Under the authority granted to it by the Military
Housing Privatization Initiative Act, 10 U.S.C. § 2871 et seq., the Army established the
Residential Communities Initiative ("RCI") housing privatization program.  Under the
RCI program, the Army works with private sector investors and developers to improve
military housing.  In a typical privatized housing project under this program, the Army
partners with a private-sector RCI partner to form a limited liability company or limited
partnership in order to own, operate, finance, develop, and maintain family housing on a
military installation.  These corporations or partnerships are separate, independent entities
which can act without day-to-day supervision or approval of the Secretary of the Army or
his designees.[3]

The RCI program covers 44 military installations totaling nearly 86,000 privatized
homes.  To capture and report RCI resident attitudes and opinions about their housing
privatization experience, the Army relies on a resident satisfaction survey of the RCI
program.  The results of these surveys are included in the Military Housing Privatization
Initiative Program Evaluation Plan Executive Report, prepared by the Office of the
Secretary of Defense and provided to four Congressional defense committees on a semi-

---

[3] There is no evidence in the record or allegation to suggest that Mr. Clark had any authority to
act on behalf of the Secretary of the Army in regard to the actions taken by the RCI program
partnerships or corporations.

annual basis.  See Pl.'s Mot. at 12.  The Army's Office of the Assistant Chief of Staff for

Installation Management ("OACSIM"), through its Directorate of Installation Services,

Public Private Initiatives Division, oversees the RCI program.  Mr. Ian S. Clark,

OACSIM's Deputy Chief, is the liaison between the RCI partners and the Army and

oversaw the surveying at issue here.

### B.    The Request for Quotations

On November 4, 2009, Mr. Clark submitted a request to OACSIM's procuring

agency contracting officer, Ms. Cathey Robertson at the Army Corps of Engineers

("Corps"), to make a one-time sole source award to MHLI for RCI survey services for

2010 that would begin in March and end in September of that year.  On November 17,

2009, the contracting officer rejected the request to award a sole source contract to MHLI

and determined that the request for surveys needed to be competitively bid.  On March 2,

2010, the Army issued Request for Quotations ("RFQ") Number W912DR-10-T-0039,

Army Privatization Resident Satisfaction Survey, for the base year of 2010 and four

additional option years.

The RFQ called for resident satisfaction survey services, including annual

coordination and logistics, processing of survey questions, data collection, analysis

reporting, and action planning between the OACSIM and the military facilities covered

by the RCI program.  The RFQ indicated that the procurement of the survey services was

to proceed under FAR Part 8, which requires bidders to have General Service

Administration ("GSA") Federal Supply Schedule ("FSS"), and in particular an active

Mission Oriented Business Integrated Services ("MOBIS") Survey Services contract,

which falls under Special Item 874-3 on the GSA index of schedules.  The RFQ stated

that "[t]his is a Firm Fixed Price, MOBIS requirement.  The Contractor may quote

against its GSA FSS Schedule Special Item No. 874.3.  Terms and conditions listed under

their MOBIS contract will apply to this award."  Administrative Record ("AR") at 2.  The

RFQ also stated that "[p]roposing contractors shall provide an electronic copy of their

applicable GSA FSS Schedule rates covering the Task order period of performance."  Id.

The RFQ further stated that the government would evaluate the proposals using best

value practices.  The RFQ was subsequently amended to incorporate questions and

answers from prospective offerors during the bidding period.[4]

### C.      The Proposals and Award Determination

Proposals in response to the RFQ were due by March 19, 2010.  The Corps

received timely proposals from plaintiff, MHLI, Data Recognition Corporation ("DRC"),

and Teleforce, Inc. ("Teleforce").  Neither Teleforce nor plaintiff identified whether they

possessed a GSA MOBIS contract.  As a result, Ms. Robertson, the contracting officer,

sent Teleforce and plaintiff an e-mail requesting their respective GSA MOBIS contract

numbers.  Teleforce informed the contracting officer that it did not possess a GSA

MOBIS contract.  Plaintiff responded, in part, that it was working on obtaining a GSA

MOBIS contract, but that it did not yet have an approved contract.  The contracting

officer responded, explaining that the Corps intended to utilize the GSA MOBIS

---

[4]  Plaintiff challenges the government's claim that the RFQ indicated that the procurement of the survey services had to proceed under FAR Part 8, which would require bidders to possess a GSA MOBIS contract.  As discussed infra, the court finds this argument untimely.

schedule.  The contracting officer prepared a memorandum on March 29, 2010, which documented her decision, based on her reading of the RFQ, that Teleforce and plaintiff's proposals were nonresponsive.

On April 26, 2010, OACSIM completed its evaluation of the MHLI and DRC proposals and forwarded them to the contracting officer.  The evaluators, Mr. Clark and Mr. John Scharl, an OACSIM employee, recommended that the contracting officer select MHLI as the offeror that represented the best value to the government.  On May 18, 2010, after completing a price analysis report and a best value analysis, the contracting officer agreed, and the contract was awarded to MHLI on May 21, 2010.

Plaintiff was notified of the contract award to MHLI on May 24, 2010 by e-mail, and was informed that its proposal was nonresponsive because it did not possess a GSA MOBIS contract prior to March 19, 2010, when the bidding closed.  On May 26, 2010, plaintiff responded to the notice of non-selection e-mail, indicating that it did not agree that a MOBIS contract was mandatory under the RFQ.  The contracting officer again explained that the MOBIS contract requirement was mandatory.

### D.    Plaintiff's GAO Protest

On May 28, 2010, plaintiff filed a protest at the United States Government Accountability Office ("GAO") alleging that (1) MHLI was unqualified because its MOBIS contract did not contain the e-mail or web-based survey services required by the RFQ; (2) offerors were not required to have MOBIS contracts under the terms of the RFQ; and (3) plaintiff should have been awarded the contract since its proposed price was significantly lower than MHLI's proposed price.

After receipt of the protest, the contracting officer began an investigation to determine whether MHLI's MOBIS contract included "survey" services.  MHLI, in a June 1, 2010 e-mail to the contracting officer, responded that their MOBIS survey write-up was "generic" and did not "mention e-mail or web based surveys," but that "[t]he survey was clearly a part of our MOBIS [contract]."  AR 517.  On June 3, 2010, the contracting officer provided official notice of the GAO protest to MHLI and suspended performance of the contract until resolution of the matter.

On August 6, 2010, the GAO dismissed plaintiff's protest.  The GAO determined that the RFQ was "at best ambiguous as to the FSS [MOBIS] contract requirement," and that since plaintiff did not protest this ambiguity prior to the time quotations were due, its protest based on the ambiguous RFQ was untimely.  AR 495.  In regard to plaintiff's argument that MHLI did not possess the required MOBIS contract, the GAO determined that DRC, which had a MOBIS contract, would have been next in line for the award if plaintiff's challenge were sustained and that plaintiff therefore lacked the requisite interest to maintain the protest.[5]

### E.      Mr. Clark's Actions During and After the GAO Protest

While the GAO protest was pending, on June 11, 2010, Mr. Clark sent an e-mail to the RCI partners, notifying the partners of the GAO protest.  An e-mail forwarding this message indicated that Mr. Clark had "unofficially" told the RCI partners to continue sending completed surveys to MHLI.  A week after the GAO dismissed plaintiff's

---

[5] Plaintiff argues that DRC was in fact not next in line for the award, because DRC's *** was ***,  See AR 464-65.

protest, on August 13, 2010, the contracting officer advised MHLI that it would not be

permitted to complete the option years of the contract because neither MHLI nor its

subcontractor, EBI, which was performing the web-based portion of the survey,

possessed a MOBIS contract for that specific service.  The contracting officer did,

however, decide that MHLI could complete the base year of the contract, against advice

from counsel.

### F.      Procedural History and Termination of the Contract with MHLI

Thereafter, on August 27, 2010, plaintiff filed a complaint in this court seeking

preliminary and permanent injunctive relief to stay the performance of the contract

awarded to MHLI for the 2010 base year, and to require the Army to perform a

competition and evaluation consistent with the stated evaluation criteria in the RFQ and

with applicable procurement statutes and regulations.  On August 31, 2010, the court

issued a temporary restraining order enjoining the government "from permitting

continued performance of and/or performing the contract awarded to Military Housing

and Lodging Institute Inc."  Temporary Restraining Order, ECF No. 15.  On August 31,

2010, the contracting officer submitted a declaration indicating that MHLI had completed

approximately forty to sixty percent of the work called for in the base year of the RFQ.

On September 2, 2010, the court extended the temporary restraining order by 10 days,

until September 20, 2010.  Order, ECF No. 17.

On September 3, 2010, while the temporary restraining order was in place, Mr.

Clark advised the RCI partners via e-mail that the contract for survey services awarded to

MHLI was cancelled.  In a separate e-mail that same day, Mr. Clark indicated that the

Army planned to re-solicit the contract and that "obtaining final results for this year's survey needs to be exclusively between the [RCI] Partner and MHLI . . . the Army cannot be involved." Def.'s Mot., App. at 28-29. On September 7, 2010, the Corps officially terminated for convenience the contract awarded to MHLI pursuant to the RFQ.

On September 9, 2010, Mr. Clark sent an e-mail to the RCI partners and advised them that the RCI partners and MHLI were free to contract directly with each other to obtain the survey results for 2010. Mr. Clark hosted a teleconference with the RCI partners and MHLI's president, Mr. Jon Moore, discussing the way forward for completing the 2010 surveys if the RCI partners wished to proceed on their own. Mr. Clark also advised some of the RCI partners that he would expedite release of information pursuant to the Freedom of Information Act ("FOIA") from the resident satisfaction surveys collected and processed before the court issued a temporary restraining order, and subsequently approved any FOIA request for survey information from the RCI partnerships.

On September 20, 2010, MHLI submitted its termination for convenience proposal, totaling ***, approximately *** of MHLI's quoted price for its base year survey services. On September 23, 2010, Mr. Moore of MHLI provided a report to some of the RCI partners outlining the work that needed to be done to complete the 2010 surveys if the RCI partners wanted to enter into a private agreement. On September 30,

2010, the contracting officer settled MHLI's termination for convenience proposal for ***.[6]

Mr. Clark continued to communicate with MHLI and the RCI partners after the termination for convenience was settled.  On October 8, 2010, an RCI partner asked MHLI for a letter from the local Garrison Commander encouraging participation in the re-start of the 2010 survey.  Mr. Moore from MHLI responded that he would check with Mr. Clark, but saw no problem with the letter as long as it was a "partner action."  Mr. Clark concurred with this course of action.  On October 11, 2010, an RCI partner, Pinnacle, raised a concern that the pre-September 1, 2010 survey materials all contained the world "Army" on them, and that use of them going forward would create the appearance that they came from the Army.  MHLI suggested that Pinnacle include a cover letter explaining that it was conducting a survey previously done by the Army, a solution to which Mr. Clark concurred.  On October 15, 2010, Mr. Clark also reached out to Actus, another RCI partner, and inquired whether Actus was interested in engaging with "MHLI/whomever to obtain this year's [survey] results or simply call[] it off."  MHLI or its subcontractor, EBI, also forwarded some response rates or survey results to some RCI partners in October, November, and December of 2010.  Plaintiff alleges that survey results were sent to the Army.  The government admits that the Army did receive

---

[6] Plaintiff contends that the government did not follow proper procedures in settling the termination for convenience and that the funding provided to MHLI is evidence of an illegal sole source procurement of the survey services authorized by Mr. Clark.

links to certain survey results but that these were received through an inadvertent e-mail, an action that was subsequently corrected.

Meanwhile, on October 8, 2010, in response to a scheduling order issued by this court requesting "a declaration from the cognizant agency official regarding potential reprocurement of the services at issue in this case," Scheduling Order, ECF No. 28, the government filed the declaration of the contracting officer, Ms. Robertson, Notice, ECF No. 30.  In her declaration, Ms. Robertson stated that the Corps "has not initiated the process for determining a need for the potential re-procurement of the services covered in" the contract awarded to MHLI or the RFQ, that the Corps "is not at any stage in the process of reprocuring the services" covered by the terminated contract or the RFQ, that the Corps "has no proposed solicitation, proposed contract or proposed award of a contract for the services covered in" the contract or the RFQ, and that the Corps "has not initiated the process for determining a need for a potential new procurement for the services covered in" the contract or the RFQ.  Declaration at 2, Oct. 8, 2010, ECF No. 30-1.

On or about October 21, 2010, this court issued a verbal preliminary injunction enjoining OACSIM and the Corps from procuring any further goods or services during the pendency of the litigation in this case.  On November 16, 2010, based on the administrative record and other documents filed by the government at the request of the court, plaintiff filed a notice alleging that the government may have violated this court's temporary restraining order and preliminary injunction.  Notice, ECF No. 50.  At a status conference held on December 8, 2010, the court was notified that the Army was

conducting an investigation into whether there were violations of the court's temporary restraining order and preliminary injunction in this matter.  See Order, ECF No. 68.  On December 13, 2010, based on the court's December 8, 2010 status conference, MHLI advised the RCI partners that had sought to complete the 2010 resident satisfaction surveys that, pursuant to the court's instructions, 2010 data would no longer be available effective December 10, 2010.

The government filed the results of the Army investigation on January 12, 2011. Notice, ECF No. 81.  The Army investigator concluded that there were no violations of the court's orders by the Army or Army employees. Id., Ex. 1 at 16.  As part of this investigation, an Army investigator asked Mr. Clark if he had informed the contracting officer about his communications with the RCI partners and MHLI.  Def.'s Reply, App. at 70.  Mr. Clark indicated that he had not requested authorization from his supervisors regarding the continuation of the 2010 resident satisfaction survey after the MHLI contract was terminated, but that he had contacted the contracting officer about his intention to inform the RCI project Garrison Commanders and RCI partners about the termination for convenience of the MHLI contract.  Id., App. at 70-71.  The Army investigator also noted that several of the RCI partners chose not to obtain survey-related services from MHLI for more than one third of the privatized housing units located on Army installations.  See Notice, Jan. 12, 2011, ECF No. 81, Ex. 1 at 15.

Briefing on the parties' motions was completed on March 30, 2012.  Oral argument was held on April 19, 2012.

## II.   DISCUSSION

Plaintiff sets forth four counts in its Second Amended Complaint.  In Count I, plaintiff argues that the contracting officer arbitrarily and capriciously eliminated it from the GSA FSS survey services procurement in violation of CICA.  Compl. ¶¶ 47-50.  In Count II, plaintiff alleges that OACSIM authorized the private RCI partners to hold a second procurement for the survey services at issue, which resulted in an illegal sole source award to MHLI in violation of CICA and this court's orders.  Id. ¶¶ 51-58.  In Count III, plaintiff contends that the Corps and OACSIM engaged in multiple willful CICA violations and misled the GAO, and that, because of this pattern of misconduct, extraordinary relief is justified.  Id. ¶¶ 59-62.  In Count IV, plaintiff does not state a cause of action but states that it is entitled to injunctive relief in this case, in particular, a permanent injunction requiring the United States to refrain from issuing a procurement for the survey services sought in the solicitation at issue until notice is first provided.  Id. ¶¶ 63-68, A-C.   Plaintiff also requests $55,000 in bid preparation costs and an award of attorneys' fees.  Id. ¶¶ D-E.

The government's motion to dismiss challenges this court's jurisdiction over plaintiff's claims and whether plaintiff states a claim upon which the court can grant relief.   The court will discuss the government's arguments in turn.

### A.   Plaintiff Does Not Have Standing to Challenge the Contract Award to MHLI

The government first argues that the court should dismiss plaintiff's claims in connection with the initial award to MHLI because plaintiff lacks standing.  A challenge

to plaintiff's standing presents a threshold question of this court's subject matter jurisdiction over plaintiff's claims. Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369-70 (Fed. Cir. 2002). When a party has moved to dismiss for lack of subject matter jurisdiction, the alleged facts in the complaint are viewed as true. Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Additionally, when considering a motion to dismiss for lack of subject matter jurisdiction, a court may look beyond the pleadings and "inquire into jurisdictional facts" to determine whether jurisdiction exists. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). If plaintiff cannot establish standing to challenge the procurement, then this court lacks subject matter jurisdiction over the protest, and Count I of plaintiff's complaint must be dismissed.

The Tucker Act limits the bid protest jurisdiction of this court to challenges brought by "interested parties." Myers, 275 F.3d at 1369-70. Interested parties are those "prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Am. Fed'n of Gov't Emps. v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001); Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006). To be an interested party, plaintiff must satisfy a two-part test. First, plaintiff must demonstrate that it is an actual or prospective bidder. Rex Serv. Corp., 448 F.3d at 1307. Second, plaintiff must demonstrate that it has a direct economic interest in the procurement. Id. In order to establish a direct economic interest in the procurement, plaintiff must demonstrate prejudice. See Myers, 275 F.3d at 1369-70 ("[P]rejudice (or injury) is a necessary element of standing."). To demonstrate

prejudice in post-award bid protests, such as the one here, plaintiff must show that "but for the error, it would have had a substantial chance of securing the contract." <u>Labatt Food Serv., Inc. v. United States</u>, 577 F.3d 1375, 1378 (Fed. Cir. 2009) (citations omitted); <u>Rex Serv. Corp.</u>, 448 F.3d at 1308.

Here, the government argues that plaintiff lacks standing because the RFQ required that bidders have a GSA MOBIS contract, and plaintiff did not possess a GSA MOBIS contract at the closing date for receipt of proposals. Def.'s Mot. at 22. Thus, the government argues, plaintiff cannot establish standing because it was never eligible for the award.

Generally, a non-FSS contractor, such as plaintiff at the close of bidding, cannot challenge a contract awarded through the GSA FSS procedure. This is because GSA FSS program contracts are awarded only to prequalified, prospective FSS contractors. <u>Mobile Medical Int'l Corp. v. United States</u>, 95 Fed. Cl. 706, 721-22 (2010). Indeed, Federal Acquisition Regulation ("FAR") 8.405-2(c), which governs GSA FSS procurements, requires that when a federal agency elects to use the GSA FSS, the competition must be limited to "schedule contractors that offer services that will meet the agency's needs." Under this general rule, plaintiff, as a non-FSS and therefore nonresponsive bidder, lacks standing to challenge the award to MHLI. <u>See, e.g.</u>, <u>United States v. Int'l Bus. Machs. Corp.</u>, 892 F.2d 1006, 1012 (Fed. Cir. 1989) ("A nonresponsive bidder is the epitome of one who lacks a direct economic interest.").

However, plaintiff argues that this case falls under an exception to the general rule, first outlined in <u>ATA Defense Industries, Inc. v. United States</u>, 38 Fed. Cl. 489

- 17 -

(1997).  Plaintiff asserts that, under the holding of the Court of Federal Claims in ATA, a

non-FSS contractor has standing to challenge the award of non-FSS items to an FSS

contractor, even if the procurement was limited to FSS contractors only.  Pl.'s Resp. at 5.

Plaintiff argues that it falls under this exception because MHLI's GSA FSS MOBIS

contract did not contain all of the required survey services under the terms of the RFQ

and that, therefore, MHLI's contract award contained non-FSS items that should have

been competitively bid.  In particular, plaintiff contends that MHLI's FSS contract: (1)

did not cover the full "task order period of performance" from 2010 to 2014 (a base year

plus four option years), and (2) did not contain the web-based survey services that were

the subject of the procurement.  Plaintiff then argues that it is an "interested party" under

the standing analysis because it would have had a "substantial chance" of being awarded

the contract that had been wrongfully awarded to MHLI.  Therefore, plaintiff concludes,

it has standing to challenge the award of the non-FSS items to MHLI based on the

exception articulated in ATA.[7]

     The government argues in response that the ATA exception should not apply in

this case, and the court agrees.  See Def.'s Reply at 8-9, 12.  Plaintiff's reliance on ATA

misapplies the exception to the general rule, which deprives plaintiff of standing.  In

ATA, this court held that where the government limits participation in an RFQ to offerors

---

[7] Plaintiff also argues that the RFQ was ambiguous as to whether it required a GSA MOBIS
contract.  However, it is well-settled that plaintiff may not now challenge the terms of the RFQ.
Under the Federal Circuit's decision in Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308,
1313 (Fed. Cir. 2007), "a party who has the opportunity to object to the terms of a government
solicitation containing a patent error and fails to do so prior to the close of the bidding process
waives its ability to raise the same objection subsequently in a bid protest action in the Court of
Federal Claims."

holding FSS contracts, but where the government also seeks items that are not on the FSS, a non-FSS contractor could have standing to challenge the government's decision to limit the procurement to offerors on the FSS.  38 Fed. Cl. at 495.  In so holding, the <u>ATA</u> court explained that when the alleged violation itself prevents a plaintiff from being an "interested party," the government cannot rely on that violation to exclude plaintiff from challenging the award under the Tucker Act.  <u>Id.</u>

Here, plaintiff argues that the government erred in awarding the survey services contract to MHLI, an offeror which allegedly did not possess all of the required survey services on its MOBIS contract.  Plaintiff does not contend that this error precluded plaintiff from being considered for the award.  Instead, plaintiff argues that under <u>ATA</u>, by awarding the contract to MHLI—an offeror that, upon examination, did not have all of the awarded items on its MOBIS contract—the government was obligated to consider the proposals of the non-FSS offerors as well.

The <u>ATA</u> holding, however, does not extend so far.  Unlike in <u>ATA</u>, the violation alleged in this case involves the award of an FSS contract to an allegedly nonresponsive bidder, not the decision to use the FSS to procure non-FSS items in the first instance.  In contrast to the government's actions in <u>ATA</u>, the contracting officer here did not intentionally choose to use the FSS with the knowledge that certain services were not included on the FSS.  Although plaintiff argues that "everyone in the government" knew that MHLI was not eligible to receive an FSS award, Pl.'s Resp. at 12, plaintiff does not point to any evidence to show that, as was the case in <u>ATA</u>, the government intentionally and improperly chose to use the FSS as a vehicle to award the contract to MHLI.  In fact,

the government in this case chose to expand the competition for the survey services contract to MOBIS contract holders, rather than award the procurement to MHLI on a sole source basis.[8]

At its core, the exception established in <u>ATA</u> is limited to situations where a plaintiff can demonstrate that the government's procurement violation prevents an otherwise qualified contractor from consideration and from establishing standing.  In <u>ATA</u>, that violation was limiting the procurement to FSS contractors where the government knowingly sought items not on the FSS, and where plaintiff could compete for the contract at issue but for the FSS requirement.  In this case, in contrast, the government intended to obtain all of the required services under the terms of a MOBIS contract.  Unlike in <u>ATA</u>, the government did not elect to limit the procurement to MOBIS contract holders after it learned that the services were not available from any MOBIS contractor.  Instead, the alleged violation here involves the award of the survey services contract to MHLI, where the government believed that the required survey services were included on MHLI's MOBIS contract.  However, this violation did not prevent plaintiff from being a responsive bidder under the terms of the RFQ, and plaintiff cannot invoke the <u>ATA</u> exception.

Put another way, correction of the alleged violation would not make plaintiff a qualifying offeror.  Even if the government corrected its alleged error, the beneficiaries of

---

[8] Furthermore, while the court does not reach this argument, the government now contends that the contracting officer initially reviewed MHLI's proposal and determined that it possessed a valid GSA FSS MOBIS contract, and that web-based services were included in MHLI's contract as reasonably interpreted.  <u>See</u> Def.'s Reply at 15-17.

this correction would be only those contractors who possessed a MOBIS contract and were thus qualified to receive the award.  Because it is undisputed that plaintiff did not possess a MOBIS contract at the close of bidding, plaintiff simply was not a responsive bidder to begin with.  Only a party with a MOBIS contract for all of the required services would have standing to challenge the MHLI award.  Plaintiff is not among this class of parties, and, thus under the legal standards governing standing, cannot show that "but for the error, it would have had a substantial chance of securing the contract." Labatt, 577 F.3d at 1378.  In such circumstances, plaintiff cannot establish standing. [9]

The court must also reject plaintiff's argument that it has established standing to challenge the award to MHLI on the grounds that "the procurement should have been re-competed on an unrestricted basis because no qualified offerors participated."  Pl.'s Resp. at 4.  Plaintiff argues that because the government found that the only other responsive offeror, DRC, was ***, it should have rebid the contract once it learned that MHLI did not have all the necessary survey services in its MOBIS contract and was thus nonresponsive.  The record indicates that the government elected to terminate the MHLI contract because MHLI's MOBIS contract did not expressly include web-based surveys. The contracting officer has provided an affidavit stating that the government decided not to re-procure the surveys.  In such circumstances, the basis for plaintiff's standing claim

---

[9] Plaintiff also argues that it possesses standing under the Court of Federal Claims' recent decision in Mobile Medical International Corp. v. United States, 95 Fed. Cl. 706 (2010), which also relies on ATA.  For the reasons discussed above, the court finds that the exception established in ATA does not apply and thus Mobile Medical, which relies on ATA, does not alter this court's conclusion on standing.

is too attenuated.  The court cannot speculate as to what would have happened had the government initially found MHLI's proposal nonresponsive and then elected to reject the remaining proposal as ***.[10]

In sum, because plaintiff did not have a MOBIS contract at the close of bidding, it was a nonresponsive bidder, and thus does not have standing to challenge the contract award to MHLI.  The court therefore lacks jurisdiction over Count I of plaintiff's complaint.[11]

### B.    Three S Has Not Established That a Second Procurement Took Place

Having established that the court lacks jurisdiction to entertain plaintiff's bid protest claim based on the award to MHLI, the court now turns to plaintiff's remaining claims.  Central to these remaining allegations is plaintiff's contention that the Army illegally conducted a sole source procurement by facilitating private agreements between

---

[10] Because the court finds that plaintiff has failed to establish standing with regard to its claims in connection with the award to MHLI, it does not reach the government's alternative argument that plaintiff's claim regarding the award to MHLI is also moot.  See Myers, 275 F.3d at 1369. However, the court notes that generally, the termination of a contract moots a challenge to the award of that contract.  See, e.g., GTA Containers, Inc. v. United States, No. 11-606C, 2012 WL 562432, at *9 (Fed. Cl. Feb. 22, 2012) ("Ordinarily, . . . the termination of a sued-upon contract would moot a challenge to the award of that contract."); CCL Serv. Corp. v. United States, 43 Fed. Cl. 680, 690 (1999) (holding cancellation of a contract "definitely moot[s]" declaratory and injunctive relief based on award violation); SKJ & Assocs., Inc. v. United States, 67 Fed. Cl. 218, 229 (2005).

[11] Because the court has determined that it does not have jurisdiction over plaintiff's claim arising from the initial MHLI award, it does not reach plaintiff's claim for bid protest costs. See, e.g., CCL Serv. Corp. v. United States, 43 Fed. Cl. 680, 690 (1999) ("[A] decision on the merits of the award must be made prior to the award of bid preparation and proposal costs. Without analysis of the merits of the award, the court lacks a basis to grant further relief."); Lion Raisins Inc. v. United States, 69 Fed. Cl. 32, 35-36 (2005) (same); see also PRC, Inc. v. Widnall, 64 F.3d 644, 647 (Fed. Cir. 1995) ("[A] prerequisite for an award of protest and proposal costs is a determination . . . that a challenged agency action violated a statute or regulation.").

MHLI and the RCI partners to complete the 2010 resident satisfaction survey.  See Compl. ¶¶ 51-62.  In its complaint, plaintiff alleges that, in violation of this court's orders, Mr. Clark and the Corps acted to re-procure the survey services from MHLI by coordinating the completion of the base year surveys via private agreements between MHLI and the RCI partners.  Id. ¶¶ 55-56.  Plaintiff contends that these "actions created a second sole source procurement,[12] with no proper sole source justification, to award a sole source contract to MHLI in violation of" CICA.  Id. ¶ 57.

Plaintiff's claim regarding this alleged sole source procurement centers on the conduct of Mr. Clark who, as discussed above, in a series of e-mail exchanges and phone calls, coordinated the potential completion of the 2010 RCI surveys through private agreements between MHLI and the RCI partners.  See Pl.'s Mot. at 16-25.  Plaintiff further argues that MHLI sent the Army links to the survey results, indicating that the Army was behind the agreement between the RCI partners and MHLI to complete the 2010 survey.  Pl.'s Resp. at 17.  Plaintiff also alleges that the Army paid for the additional work performed by MHLI by overpaying MHLI in its termination settlement. Pl.'s Resp. at 17-18.

The government argues that plaintiff's allegations regarding the Army's or Mr. Clark's actions following the termination of the contract with MHLI do not amount to a "procurement" under the terms of 28 U.S.C. § 1491(b).  Def.'s Reply at 18.  Specifically, the government argues that plaintiff "has not alleged that the Army, through the actions

---

[12] Plaintiff calls this a "second" sole source procurement to distinguish this alleged procurement from the contract award to MHLI pursuant to the RFQ.

[of] Mr. Clark, engaged in acquiring property or services, determined a need for property or services, or acted in any way related to contract completion or closeout." [13]  Id. Instead, the government contends that Mr. Clark's actions facilitated private agreements between the RCI partners and MHLI "for the benefit of the RCI Partnerships, rather than the Army," and that, therefore, Mr. Clark's actions were not taken in connection with a procurement on behalf of the Army.  Id. at 18-19.  The government further argues that plaintiff fails to allege that Mr. Clark possessed the authority to bind the United States to any procurement or that the contracting officer ratified Mr. Clark's actions.  Id. at 19-20, 28-32.  Therefore plaintiff, the government asserts, cannot state a claim for relief under § 1491(b) because, taking all of plaintiff's allegations regarding Mr.Clark's actions as true, plaintiff cannot establish that the government conducted an illegal sole source procurement in violation of CICA.

       To survive a motion to dismiss for failure to state a claim upon which relief may be granted under RCFC 12(b)(6), a complaint must contain facts sufficient to "'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff's factual allegations must "raise a right to relief above the speculative level" and cross "the line from conceivable to plausible."  Bell Atl. Corp., 550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

---

[13] These are the activities defined as "procurement" activities by the Federal Circuit in Distributed Solutions, Inc. v. United States, 539 F.3d 1340, 1345-46 (Fed. Cir. 2008), discussed infra.

will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp., 550 U.S. at 555, 557).  In considering a motion under RCFC 12(b)(6), "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff."  Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing Papasan v. Allain, 478 U.S. 265, 283 (1986); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).  "[T]he Court of Federal Claims has both the power and the obligation to dismiss cases in which no claim has been properly stated."  Brach v. United States, 443 F. App'x 543, 547 (Fed. Cir. 2011).

To sufficiently allege a claim for relief under § 1491(b), a plaintiff must demonstrate that its protest is "in connection with a procurement or a proposed procurement" within the scope of the Tucker Act.  In Distributed Solutions, Inc. v. United States, 539 F.3d 1340, 1345 (Fed. Cir. 2008), the Federal Circuit defined the scope of a federal procurement to include "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout."  Under the FAR, only the contracting officer has the "authority to enter into, administer, or terminate contracts and make related determinations and findings."  FAR § 1.602-1(a); see also Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 383-84 (1947); Winter v. Cath-dr/Balti Joint Venture, 497 F.3d 1339, 1344 (Fed. Cir. 2007) ("With respect to contracts for supplies and services, the federal government has given the authority to enter into and modify contracts to only a limited class of government employees: contracting officers.").  Where a government

agent without contracting authority acts to bind the government, the government will be bound only if the action is "subsequently ratified by those with authority if the ratifying officials have actual or constructive knowledge of the unauthorized acts." Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1433 (Fed. Cir. 1998) (citing United States v. Beebe, 180 U.S. 343, 354 (1901)); Monarch Assurance P.L.C. v. United States, 244 F.3d 1356, 1360 (Fed. Cir. 2001).

Here, the court agrees with the government that plaintiff has failed to state a claim with regard to an illegal sole source procurement. As the government correctly argues, Mr. Clark's actions were not taken "in connection with a procurement or proposed procurement" on behalf of the Army. Mr. Clark lacked authority to conduct a procurement on behalf of the government and plaintiff has failed to allege that Mr. Clark's actions were ratified by anyone with contracting authority.

Mr. Clark, as the Deputy Chief who acted as the liaison to the RCI partners, did not have the authority to procure services on behalf of the government. The government can only be bound by agents authorized to act on its behalf. Merrill, 332 U.S. at 384; Harbert/Lummus, 142 F.3d at 1432; Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997). Plaintiff avers that "Mr. Clark was a person with authority" based on his experiences and responsibilities with the RCI program. Pl.'s Resp. at 16. Yet, as plaintiff acknowledges, Ms. Robertson was the contracting officer responsible for the acquisition of the RCI survey services. Moreover, as the government argues and as noted above, see supra note 3, there is no evidence in the record to suggest that Mr. Clark, as the OASCIM Deputy Chief involved in the RCI program, has any final decision making

authority in the Army that would extend to authorizing acquisitions for or by any RCI

partners.  Mr. Clark's program authority is not the same as contracting authority, and as a

matter of law, without contracting authority he could not initiate, let alone bind the

government in a procurement decision.

In addition, plaintiff does not allege that Mr. Clark's actions were ever ratified by

Ms. Robertson, the contracting officer, or anyone else with authority.  While plaintiff's

suspicions that the record indicates "knowledge of some joint plan" between Ms.

Robertson, Mr. Clark, and other Army officials, this allegation is not sufficient to

demonstrate beyond speculation that Ms. Robertson "ratified" Mr. Clark's activities.

See, e.g., Adamowicz v. United States, 101 Fed. Cl. 485, 490 (2011) ("Only a

government employee with actual authority can make an otherwise unauthorized

agreement binding by ratifying it.") (citing Winter, 497 F.3d at 1346-47); see also

Harbert/Lummus, 142 F.3d at 1433-34 ("In the absence of either actual or constructive

knowledge of the unilateral contract, the [contracting officer's] silence cannot be a

ratification[.]").

Mr. Clark's actions therefore do not amount to a procurement on behalf of the

United States.  It is for these reasons that, contrary to plaintiff's contention, this case does

not fall within the boundaries of Distributed Solutions.  While broadly defining the scope

of a federal procurement, Distributed Solutions does not eliminate the well-settled

principle that procurement activities may only be performed by those authorized to

conduct those activities on behalf of the government.  Aside from conclusory statements,

plaintiff does not allege that a government official with contracting authority entered into

or ratified the agreements between MHLI and the RCI partners on behalf of the Army.

Bare allegations lacking "further factual enhancement" are not sufficient to state a claim

that the government entered into a sole source procurement when Mr. Clark engaged in

discussions with MHLI and the RCI partners.[14]  Bell Atl. Corp., 550 U.S. at 557.

Therefore, the court holds that plaintiff's claim based on an alleged sole source

procurement to MHLI following the termination of its initial contract must be dismissed

under RCFC 12(b)(6).[15]

_____

[14]  Plaintiff also argues that even if Mr. Clark was not authorized to procure services for the
government, an acquisition of survey services by the RCI partners would qualify as a
"procurement" under § 1491(b) because of the unique relationship between the Army and the
RCI partners in the RCI program, under which the Army has minority ownership interests in the
limited liability company or limited partnership.  See Pl.'s Resp. at 14.  The government argues
that to "the extent that Three S is attempting to create the appearance that the Army and the RCI
Partners have a legally binding partnership or contract agreement, Three S is mistaken.
Although called 'partners,' there is no question that the RCI partners are private businesses."
Def.'s Mot. at 35.  The court agrees.  As noted above, the Army's role under the RCI program is
limited.  Under 10 U.S.C. § 2875, the Army acts as an investor in privatized housing projects.
Under the terms of the corporation's or partnership's governing documents, the corporation or
partnership manages its day-to-day operations.  See, e.g., ECF No. 99, Operating Agreement of
Aberdeen Proving Ground Communities, LLC, at 29 (an example of an RCI partnership
operating agreement that authorizes the private entity to enter into contracts necessary to achieve
its purposes).  In only very limited circumstances, not alleged to be applicable here, does the
Secretary of the Army possess approval authority over RCI partnership actions.

Indeed, there is no allegation by plaintiff that the RCI partners themselves could engage in
"federal" acquisitions subject to the federal procurement statutes and regulations.  Furthermore,
plaintiff does not allege in its complaint the elements to establish that the private RCI partners
are "agents" of the United States Army with actual or implied authority to bind the government.
The court therefore rejects this aspect of plaintiff's argument.

[15] The government argues that the court should dismiss this claim for lack of subject matter
jurisdiction for the same reasons as set forth above.  The court rejects this reasoning.  Plaintiff
has alleged that Mr. Clark's actions amounted to a procurement and thus plaintiff has alleged a
claim within this court's subject matter jurisdiction.  Plaintiff has, however, failed to state a bid
protest claim because plaintiff cannot establish that the actions of Mr. Clark amount to a
"procurement" within the meaning of § 1491(b).  It is for this reason that this claim must be
dismissed.  Furthermore, because the court rejects plaintiff's contention that the government

## III. CONCLUSION

For the foregoing reasons, the government's motion to dismiss for lack of subject

matter jurisdiction and failure to state a claim pursuant to RCFC 12(b)(1) and 12(b)(6) is

**GRANTED**.[16]

Each party shall bear its own costs.  The Clerk is directed to enter judgment

accordingly.

**IT IS SO ORDERED.**

s/Nancy B. Firestone<br>
NANCY B. FIRESTONE<br>
Judge

---

conducted a procurement in this case, the court similarly rejects for failure to state a claim plaintiff's Count III, which alleges a "pattern" of illegal sole source actions.

[16] Because the court grants the government's motion to dismiss it has no occasion to rule on the parties' cross motions for judgment on the administrative record.

Furthermore, because the court has determined that it does not have jurisdiction over plaintiff's claim arising from the initial MHLI award, and that plaintiff has failed to state a claim in connection with the actions of Mr. Clark following the termination of the MHLI contract, it does not reach plaintiff's claim for injunctive relief in the form of notice.  The court has no basis for awarding injunctive relief.  As the government argues, if the Army seeks to award the contract to MHLI improperly as a subcontractor, or seeks a sole source procurement to MHLI for the survey services, plaintiff will receive notice of that award under applicable procurement regulations, and the government is entitled to the presumption that it will follow those regulations.  See, e.g., Chapman Law Firm Co. v. Greenleaf Const. Co., 490 F.3d 934, 940 (Fed. Cir. 2007).  Should the Army ever seek to re-procure, plaintiff will have an opportunity to challenge any actions of the Army in connection with the acquisition of those survey services.  However, plaintiff's current claim for notice, based on its suspicions about the Army's future actions, does not create a ripe controversy.  Harris Patriot Healthcare Solutions, LLC v. United States, 95 Fed. Cl. 585, 596 (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 97 (1977)); Madison Servs., Inc. v. United States, 90 Fed. Cl. 673, 679 (2009) (holding that a plaintiff "cannot avoid dismissal by speculating as to what [the government] might do," in a protest challenging the government's "expressed intention" to follow a recommendation of the GAO in a previous bid protest, and where the underlying procurement had been cancelled).